## MATTER OF KUMAH

In Visa Petition Proceedings

A-20106357

*Decided by Board October 15, 1985*

(1) A court decree confirming a nonjudicial divorce under Ghanaian customary law issued by an appropriate Ghanaian court is accepted as evidence both that a customary marriage was dissolved by a customary divorce and that the customary divorce is regarded as valid by the Ghanaian Government.

(2) A Ghanaian court decree which either grants or confirms a Ghanaian customary divorce is an essential element of proof in substantiating a claimed customary divorce in that if the petitioner is unable to persuade Ghanaian court officials that the decree should be issued because the questions relating to the tribal affiliations of the parties concerned, the customary divorce law of that tribe, or the conformance to the pertinent ceremonial procedures, then that petitioner cannot satisfy his burden of proving the claimed customary divorce for purposes of the United States immigration laws. *Matter of DaBaase*, 16 I&N Dec. 720 (BIA 1979), *aff'd*, *DaBaase v. INS*, 627 F.2d 117 (8th Cir. 1980) (per curiam); *Matter of DaBaase*, 16 I&N Dec. 39 (BIA 1976); and *Matter of Akinola*, 15 I&N Dec. 359 (BIA 1975), modified.

(3) A Ghanaian court decree confirming a nonjudicial divorce under Ghanaian customary law is not deemed to be conclusive proof of the facts certified therein because of the potential for fraud or error in their issuance: fraud or mistake may be reasonably suspected where the facts recited on the decree of confirmation are contradicted by other evidence and the discrepancies have not been satisfactorily explained by the petitioner or where there is an absence of sufficient corroborating evidence.

ON BEHALF OF PETITIONER:
Bruce A. Tonkonow, Esquire
Farrelly, Tapper & Elkin
410 Asylum Street
Hartford, Connecticut 06103

ON BEHALF OF SERVICE:
Richard G. Buyniski
General Attorney

BY:  Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The United States citizen petitioner has applied for immediate relative status for the beneficiary as his spouse under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). In a decision dated June 7, 1984, the district director denied the

visa petition. The petitioner has appealed from that decision. The record will be remanded to the district director.

The petitioner is a 26-year-old United States citizen. The beneficiary is a 40-year-old native and citizen of Ghana. The record reflects that the petitioner and the beneficiary were married in Springfield, Massachusetts, on October 31, 1979.[1] The record indicates that the beneficiary was previously married in Ghana on December 3, 1970, according to the local tribal custom. It is claimed that the beneficiary's first marriage was dissolved by divorce on November 20, 1973, according to the Ashanti tribal laws and custom. The petitioner filed a visa petition on behalf of the beneficiary on July 9, 1980.

The evidence submitted in support of the visa petition includes a Massachusetts certificate of marriage for the petitioner and the beneficiary, a Massachusetts birth certificate for the petitioner, and a Massachusetts birth certificate in which the petitioner and the beneficiary are listed as the parents of a daughter born on February 4, 1981.

The record also includes a sworn statement from the beneficiary's uncle which was executed in Ghana on March 9, 1983, and uncertified photocopies of sworn statements from the beneficiary's father and from her first husband's father which were executed in Ghana on December 27, 1979. These sworn statements attest to the customary divorce in Ghana between the beneficiary and her first husband on November 20, 1973. In these sworn statements, it is declared that the beneficiary and her first husband were married in accordance with Ghanaian customary rites on December 3, 1970, in the Ashanti region of Ghana and that this marriage was dissolved on November 20, 1973, according to Ashanti customs.[2]

In the decision of the district director dated June 7, 1984, he denied the visa petition on the grounds that the petitioner had failed to prove the legal termination of the beneficiary's prior Ghanaian marriage, that the petitioner had failed to establish that he has a bona fide marital relationship with the beneficiary, and for lack of prosecution. The district director found that the legal requirements to prove the validity of a nonjudicial Ghanaian divorce had not been established by the evidence presented by the petitioner. In particular, the district director found that the record did not specify or document the tribal affiliations of the two parties to the

---

[1] The marriage certificate for the petitioner and the beneficiary indicates that the beneficiary in fact may be approximately 33 years old.

[2] The beneficiary's uncle states that he joined other relatives of the beneficiary and of her first husband for the ceremony of pouring libation to seal the divorce.

divorce and that the petitioner did not present any objective documentation to show the tribal rituals necessary for divorce. *Matter of DaBaase*, 16 I&N Dec. 39 (BIA 1976); *Matter of Akinola*, 15 I&N Dec. 359 (BIA 1975).

On appeal, the petitioner argues that the beneficiary's Ghanaian customary marriage was validly terminated by an Ashanti customary divorce on November 20, 1973, and thus, there was no legal impediment to the marriage between the petitioner and the beneficiary on October 31, 1979. It is maintained that the petitioner has sustained his burden of proving the validity of the beneficiary's nonjudicial divorce under Ghanaian customary law is accordance with the Board's holdings in *Matter of DaBaase, supra,* and *Matter of Akinola, supra.* In this regard, counsel for the petitioner claims that the petitioner has established the tribal affiliations of the beneficiary and her first husband, the customary divorce law of that tribe, and that the ceremonial formalities were in fact properly followed. In support of these contentions, the petitioner has proffered on appeal certified photocopies of sworn statements executed in Ghana on November 17, 1983, by the father of the beneficiary's first husband and by the chief witness to the customary divorce between the beneficiary and her first husband. These two sworn statements attest to the execution of certain delineated customary rituals performed in the Ashanti region of Ghana to dissolve the customary marriage between the beneficiary and her first husband on November 20, 1973.[3] In addition, the petitioner presented a certified photocopy of a statement from Akwasi Aidoo, Ph.D., who identified himself as an Africanist, sociologist, and ethnologist, and who provided information regarding the manner and nature of Ashanti tribal divorces in Ghana.

In visa petition proceedings, the petitioner has the burden of establishing the eligibility of the beneficiary for immediate relative status under section 201(b) of the Act. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). In such proceedings, the law of a foreign country is a question of fact which must be proven by the petitioner if he relies on it to establish eligibility for an immigration benefit. *Matter of Annang*, 14 I&N Dec. 502 (BIA 1973). Under 8 C.F.R. § 204.2(c)(2) (1985), where a petition for a spouse is filed, the petitioner must submit proof of the legal termination of all previous marriages of both husband and wife.

---

[3] The customary rituals performed consisted of the pouring of a libation in the presence of family members and other witnesses and the return of the marriage gift, described as 24 cedis and two bottles of schnapps.

In Ghana, a divorce governed by customary law may be granted by a Ghanaian district court, or it may be effected without recourse to the courts. The divorce may be proven by a judicial decree issued by the district court which granted the divorce or by a district court decree which confirms the fact that a customary divorce was validly obtained. *See Matter of DaBaase, supra; Matter of Akinola, supra.* Previously, the Board has held that in the absence of a court decree which either grants or confirms the customary divorce, the petitioner could prove a nonjudicial divorce by presenting sufficient proof to establish that the divorce under Ghanaian customary law was validly obtained. *Matter of DaBaase,* 16 I&N Dec. 720 (BIA 1979), *aff'd, DaBaase v. INS,* 627 F.2d 117 (8th Cir. 1980) (per curiam); *Matter of DaBaase,* 16 I&N Dec. 39 (BIA 1976); *Matter of Akinola, supra.* In this regard, we specifically held that the petitioner must establish the tribe or ethnic group to which the parties of the customary divorce belong, the customary divorce law of such tribe or group, and that the pertinent ceremonial procedures were followed. *Matter of DaBaase,* 16 I&N Dec. 720 (BIA 1979), *aff'd, DaBaase v. INS,* 627 F.2d 117 (8th Cir. 1980) (per curiam); *Matter of DaBaase,* 16 I&N Dec. 39 (BIA 1976); *Matter of Akinola, supra.* In *Matter of DaBaase,* 16 I&N Dec. 39 (BIA 1976), the Board advised that the evidence submitted to establish the customary law may include evidence derived from reported cases, legal treatises and commentaries, and depositions of legal scholars. We noted that proof that the customary divorce was properly perfected could be established by specific affidavits from the parties and witnesses involved. The Board's holding in these three published decisions was initially based on a Library of Congress expert memorandum which indicates that it is possible to effect a valid Ghanaian customary divorce without recourse to the courts. However, that Library of Congress memorandum also states that the district courts of Ghana have been given jurisdiction over divorces governed by customary law. In *Matter of Akinola, supra,* we stated that the local Ghanaian courts are uniquely equipped to determine the validity of a customary divorce. In contrast to a court-decreed judicial divorce, a purely customary divorce in a traditional tribal setting is difficult to prove without confirmation by a Ghanaian court. As there is no document issued for a customary divorce and there is no system of registration, we found proof of a customary divorce necessarily would be provided by witnesses. *Matter of DaBaase,* 16 I&N Dec. 39 (BIA 1976).

Recently, the section relating to Ghana in Appendix B/C/E of the State Department's Foreign Affairs Manual, which is used by the Immigration and Naturalization Service to determine the avail-

ability of foreign documents pursuant to the Immigration and Naturalization Service Operations Instructions 204.2a, has been amended extensively so as to virtually eliminate the probative value accorded affidavits by family members attesting to a customary divorce. On July 9, 1982, the Foreign Affairs Manual was amended so as to provide that the preferred documentation for the dissolution of a customary marriage is an application by the parties concerned to the appropriate Ghanaian court under the Matrimonial Causes Act of 1971 (Act 367), section 41(2), for a decree of divorce, and that the affidavits attesting to a divorce under customary law provided by the heads of the respective families are of minimal reliability. *See* Vol. 9, Foreign Affairs Manual, Part IV, Appendix B/C/E, "Ghana, Republic of," as amended on July 9, 1982. Effective July 27, 1984, that section was again amended, and the amended section states in pertinent part:

> *Divorce Certificate:* Available. Certificates for the dissolution of a civil marriage may be obtained from the court which granted the divorce. Proper documentation of the dissolution of a customary marriage is a decree, issued by a high court, circuit court or district court under the Matrimonial Causes Act of 1971 (Act 367), Section 41(2), stating that the marriage in question was dissolved in accordance with customary law. Affidavits or "statutory declarations" attesting to a divorce under customary law, even when duly sworn, do not constitute proper documentation of the dissolution of a Ghanaian customary marriage. (Amended)

Vol. 9, Foreign Affairs Manual, Part IV, Appendix B/C/E, "Ghana, Republic of," as amended on July 27, 1984.

In light of the information provided in the Foreign Affairs Manual as recently amended and after reevaluating our prior decisions, we shall consider a court decree which either grants or confirms a Ghanaian customary divorce to be an essential element of proof in substantiating a claimed customary divorce. A court decree confirming a customary divorce issued by an appropriate Ghanaian court is accepted as evidence both that a customary marriage was dissolved by a customary divorce and that the customary divorce is regarded as valid by the Ghanaian Government. The Board does not question the validity of a customary divorce which is valid under the law of Ghana. Rather, we consider a Ghanaian court decree to be an essential element of proof in establishing the customary divorce in that if the petitioner is unable to persuade Ghanaian court officials that the decree of confirmation should be issued because of questions relating to the tribal affiliations of the parties concerned, the customary divorce law of that tribe, or the conformance to the pertinent ceremonial procedures, then that petitioner cannot satisfy his burden of proving the claimed customary divorce for purposes of our immigration laws. *Cf. Matter of Chu*, 19 I&N Dec. 81 (BIA 1984). As the decree of confirmation is a foreign

official record, it should be certified in accordance with 8 C.F.R. § 287.6 (1985).

To the extent that our holding in the instant case that a Ghanaian customary divorce may not be established without evidence of a court decree granting or confirming the customary divorce conflicts with our decisions in *Matter of DaBaase*, 16 I&N Dec. 720 (BIA 1979), *aff'd*, *DaBaase v. INS*, 627 F.2d 117 (8th Cir. 1980) (per curiam); *Matter of DaBaase*, 16 I&N Dec. 39 (BIA 1976); and *Matter of Akinola*, *supra*, those three cases are herewith modified. A Ghanaian court decree confirming that a customary divorce was validly obtained, however, is not deemed to be conclusive proof of the facts certified therein because of the potential for fraud and error in their issuance. *Cf. Matter of Chu*, *supra*; *Matter of Serna*, 16 I&N Dec. 643 (BIA 1978). We note that court decrees confirming a customary divorce are not issued contemporaneously with the customary divorce proceedings due to the very nature of the customary divorce and that such court decrees of confirmation are issued in part on the basis of witness statements provided by members of the petitioner's or beneficiary's family. It is reasonable to suspect fraud or mistake where the facts recited on the court decree of confirmation are contradicted by other evidence of record and the discrepancies have not been satisfactorily explained by the petitioner. Corroborating evidence which was submitted in Ghana in support of the application for a court decree confirming that a customary divorce was validly obtained should be available. The absence of corroborating evidence will raise the issue of the probative value accorded the decree of confirmation.

In the present case, we will remand the record to the district director in order to afford the petitioner an opportunity to obtain and submit the evidence necessary to establish the dissolution of the beneficiary's first marriage by the claimed Ghanaian customary divorce.

The district director also denied the instant visa petition on two other grounds. We note that there are several significant discrepancies between the record on appeal and the evidence referred to by the district director in his June 7, 1984, decision regarding the issues of a sham marriage and the lack of prosecution. For example, the district director noted that a birth certificate which was presented to prove a child was born to the petitioner and the beneficiary did not contain the name of either parent, but the birth certificate of record shows that the petitioner and the beneficiary are

listed as the parents of a daughter born on February 4, 1981.[4] The district director's conclusion that there was a lack of prosecution is directly disputed by the petitioner and his counsel who claim that most of the requested documentary evidence was submitted to the Service prior to the date of the district director's decision. In addition, the district director, in rendering his decision on June 7, 1984, referred to and relied upon derogatory evidence consisting of a 1982 Service investigation report which is not included in the record. It does not appear that the petitioner was advised of this derogatory evidence in the record or was given an opportunity to rebut this evidence prior to the entry of the decision by the district director as required by 8 C.F.R. § 103.2(b)(2) (1985). *Matter of Calilao,* 16 I&N Dec. 104 (BIA 1977); *Matter of Holmes,* 14 I&N Dec. 647 (BIA 1974). Also, the record indicates that the district director relied upon the beneficiary's Service records which are not included in the record on appeal. On remand, the two other issues of a sham marriage and lack of prosecution should be reconsidered by the district director.

After the petitioner has been given an opportunity to submit any additional evidence necessary to establish the beneficiary's eligibility for immediate relative status, the district director should consider all the evidence of record and enter a new decision, stating his reasons, and make appropriate service on the interested parties in accordance with *Matter of To,* 14 I&N Dec. 679 (BIA 1974).

**ORDER:** The record is remanded to the district director for further proceedings consistent with the foregoing opinion and the entry of a new decision.

---

[4] On appeal, counsel for the petitioner states that the beneficiary is pregnant with a second child.